# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE N. PEREA, | ) 1:05cv0737 JMD |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Renee N. Perea ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable John M. Dixon, Jr., United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On January 6, 2006, the Honorable Anthony W. Ishii assigned the case to Magistrate Judge Sandra M. Snyder. On July 16, 2007, the Honorable David F. Levi reassigned the case to the undersigned for all purposes.

# FACTS AND PRIOR PROCEEDINGS[2]

On May 13, 2002, Plaintiff filed an application for SSI benefits. AR 57-60. She alleged disability since March 1999, due to "Hep-C," a foot injury (spurs), high blood pressure and heart irregularity. AR 57, 72. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 42-45, 48-51, 52. On August 6, 2004, ALJ James E. Ross held a hearing. AR 244-275. ALJ Ross denied benefits on September 23, 2004. AR 11-19. On April 26, 2005, the Appeals Council denied Plaintiff's request for review. AR 4-6.

Hearing Testimony

The hearing convened in Bakersfield, California. AR 246. Plaintiff appeared with her attorney, Brian Zeiden. AR 246.

Plaintiff was born on January 11, 1964. AR 247. She was 38 years old when she filed her application for SSI benefits. AR 247. She has a GED. AR 247. She last worked in 1999 for about five or six months at a painting job in Santa Barbara. AR 247-248. She has had other painting jobs over the last 15 years. AR 248.

Plaintiff testified that her least strenuous job during the last 15 years was telemarketing. AR 248. She had two of those jobs--one in 1995 for about a month and one in 1999 for no more than three months. AR 248. In the telemarketing jobs, she sat for the entire 8-hour day except to go to the restroom or to get lunch. AR 249. She did not do any lifting or any physical exertion. AR 249. In the first job, she held a telephone in her hand. In the second job, it was headphones. AR 249.

Plaintiff did not think she could do the telemarketing job because she could not sit without her legs getting numb and swollen. AR 250. After approximately five to ten minutes of sitting, her legs begin to swell and get numb. AR 250. It happens every time she sits down and she has to get up. AR 250. If she stands too long (anywhere from 15 minutes to half of an hour) her legs begin to swell and she has to put them up above her heart. AR 250. She has been told

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

by a doctor that she needs to raise her legs. AR 250. She has to keep her legs raised somewhere above her heart. AR 250-251. She will put them up on a bunch of pillows or something. AR 251. She does this just about every day. On some occasions she has had to sit through the whole day, three days in a row. AR 251. At least once a week, she has to do it three days in a row. AR 251. She has been putting her legs up for the past couple years. AR 252. It is very painful. AR 252.

Plaintiff testified that she has swelling in her legs, bruising in her veins that is painful to the touch, lots of fatigue and lots of sadness. AR 252. She has a lot of hypoglycemic episodes where she starts to get lightheaded, starts to gets confused and sweats. To settle that, she has to eat something. AR 252.

Plaintiff testified that she gets tingling and numbness in her hands. She has a lot of headaches. She is fatigued. She has heart palpitations, skipping of her heart. She has blurry vision that is getting a lot worse. She periodically gets nosebleeds. AR 253.

Plaintiff testified that she gets the swelling in her legs on a constant basis if she is standing too much. AR 253. She can stand about 20 minutes. AR 254. She has had bruised veins in her legs for about three years. She thinks the bruises are a result of high blood pressure. AR 254.

Plaintiff testified that she started experiencing fatigue in 1999 and it started to hit hard in 2000. AR 254. It is different from sleepiness. It is "no energy" and sometimes prevents her from taking showers. AR 254. She experiences daily fatigue. AR 254. She only gets a complete three hours of sleep during the night. AR 255. She sleeps during the day every day. AR 255.

Plaintiff testified that she has depression. AR 255. It started after she stopped working in 1999 and she takes medications for it. She experiences sadness that she relates to her depression. AR 255. Plaintiff testified that it has "gotten a lot worse." AR 255.

Plaintiff has hypoglycemic episodes and experiences lightheadedness and sweating every day. AR 256. If she uses any little bit of energy, she goes "into the hypoglycemic stuff" and she

has to eat something. AR 256. Plaintiff testified that it happens so much that she cannot "even keep up with food." AR 256. She experiences headaches every night. AR 256.

Plaintiff testified that the tips of her fingers will tingle like pins are poking them. AR 256. This has been going on for a couple of years. AR 256-257. It comes and goes. AR 257. Her toes are numb, very cold, and very painful all the time. AR 257. She has heart skipping every day. AR 257. She gets nose bleeds every other month. AR 258.

Plaintiff testified that she experiences side effects with all of her medications. AR 258. She has lots of nausea, dizziness and drowsiness. AR 258. The medications have affected her ability to focus or concentrate. AR 258. She does not read at all. AR 258. It has been a very long time since she was able to concentrate on reading. AR 259.

She sometimes watches TV, but generally just falls asleep. AR 259. She falls asleep more than once a day--pretty much all afternoon. AR 259.

Plaintiff testified that she feels her symptoms more in the early part of the day. They are always there. AR 259-260. She takes medication in the morning and night. AR 260.

Plaintiff brought a cane to the hearing. AR 260. She uses a cane to walk all the time. AR 260. She uses it to get out of bed and to go to the bathroom from the bed. AR 260-261. She gets muscle spasms in her legs and ankles in the morning and she has to use the cane to stand up. AR 261.

Plaintiff testified that she does not have a social life. AR 261. She does not visit with friends or family. AR 261. She last had a social life in the mid/early 90s. AR 261. She testified that her family sometimes will come to see her, but she does not go anywhere. AR 261.

Plaintiff experiences anxiety and panic attacks. AR 261-262. She gets really worried about what is going to happen to her and her mind starts racing. AR 262. It happens quite a bit, about three times a month. She sometimes has fits. She will scream at the top of her lungs. AR 262. This happens about once a month. AR 262.

Plaintiff testified that she recently went to the doctor on July 15, 2004, at Curran [sic] Medical Family Practice. AR 262-263. Curran Medical is her regular provider. AR 263. She usually is able to get in once every three months. She has to make an appointment. AR 263. It

is a county facility. AR 264. She does not pay anything. AR 264. She does not have health insurance. AR 264. She cannot afford to go to a private doctor. AR 264. She goes to Curran when they can see her. AR 264.

Plaintiff testified that she gets out of bed in the morning sometimes at 10:00 a.m., sometimes at noon. AR 264. It takes her quite a while to get around and to get something to eat. AR 265. She can make something to eat for herself, usually just a very quick, easy thing. AR 265. She does not shower on a daily basis. AR 265. She cannot bring herself to shower. AR 265. She has no energy. AR 265. After she gets something to eat, she will sit down in the living room and put her feet up. The TV will go on and she goes back to sleep. AR 265. She does not have activities that she does on a regular day. AR 266. Plaintiff testified that she does not "really do anything." AR 266. She will pretty much sit around, nod off, and watch TV during the day. AR 266. She will make something very simple for dinner. AR 266.

Plaintiff has lived with a friend since 2000. AR 266. She does not pay any rent. She has general assistance from the county and the county pays a small portion. AR 266. Plaintiff does not do upkeep of the house. AR 267. She cannot vacuum or mop. AR 267. She might water some plants in the garden if it is "not so hot." AR 267. The heaviest thing she lifts during the course of an average day is the hose or the remote. AR 267. She testified that she does not go anywhere. AR 267. She goes out once a week, but her friend takes her. AR 267. She used to drive. She has a license but not a car. AR 267. She does not go to church or to any social groups. AR 268. Plaintiff testified that if she could work she would. AR 268.

Plaintiff testified the she experiences pain in her feet and her legs. AR 268. Raising her legs when she sit makes the swelling go down a little but it takes a very long time. AR 268. The pain in her feet and legs does not go away. She takes medication but it barely touches it. AR 268. She does not feel it when she is asleep. AR 268.

Plaintiff does not have a checkbook or checking account. AR 268. She does not do any financial paperwork. AR 269. Occasionally she has looked up medication on the computer. AR 269. She has difficulty concentrating. AR 269. She has never tried to focus very long on the

internet looking up medications because her legs start to get numb, cold and swell after 10 minutes.  AR 269.

Plaintiff is right handed.  AR 269.  When her hands are numb and tingly it feels awkward to hold or grip things.  AR 270.  She can hold a pen.  She can write.  AR 270.

She does not take walks during the day.  AR 270.  She used to try to walk to help with some of the weight, but could not continue because she would get out of breath too quickly.  AR 270.  She weighs 220.  AR 270.  Her weight was 237 and it will not go down past 220.  AR 270.

Plaintiff testified that on a really bad day she feels pretty worthless.  AR 271.  It is very frustrating physically.  She cannot sit very long.  She cannot stand very long.  AR 271.  Plaintiff testified that most of the time she sleeps in what she is wearing.  AR 271.  She does not need assistance getting dressed.  AR 271.  Her housemate assists her physically, helping her get out of bed and taking a shower.  AR 271-272.  The housemate also helps when Plaintiff needs something quickly to eat.  AR 272.

Plaintiff testified that she has social anxiety.  AR 272.  She cannot be around family or crowds.  AR 272.

When questioned by the ALJ, Plaintiff testified that she drove to the hearing.  AR 272.  She did not park in the lot for the hearing building.  She parked in the parking lot next to it.  AR 272.  She walked from that parking lot to the hearing building.  AR 272.

Plaintiff testified that she told a doctor about the numbness and tingling in her fingers.  AR 272.  She has been telling Curran Medical Center Family Practice about the tingling in her hands and feet ever since 2002.  Plaintiff recalled telling Dr. Garcia about it.  Plaintiff testified that Dr. Garcia had "nothing to say about it."  AR 273.

Plaintiff testified that she stopped taking Norvasc one month prior to January 14, 2002.  AR 273.  Her medical records indicated that she stopped taking it because it made her legs swell.  AR 273.  Plaintiff testified that when she stopped taking it her legs did not stop swelling.  AR 273.  Plaintiff testified that her legs have been swollen.  AR 273.  She has told the doctors about it since January of 2004.  AR 274.

Plaintiff testified that her roommate used to work. AR 274. Her roommate has income. She gets money from a divorce and is on Social Security disability. AR 274. When asked who takes care of the house if both Plaintiff and her roommate are disabled, Plaintiff testified that her roommate can do some of the stuff to take care of the place. AR 274. When questioned about the nature of her roommate's disability, Plaintiff testified that her roommate had a heart attack a long time ago "or something." AR 275.

Medical Evidence

On February 2, 2000, Plaintiff saw Ninh Mai, D.O., in the Family Practice Clinic at Kern Medical Center ("KMC") for complaints of high blood pressure, itching and abdominal pain. AR 154-157. Dr. Mai assessed her with positive hepatitis C by history and hypertension. Dr. Mai prescribed Atenolol for the hypertension, hydrocortisone for the itching, and Zantac for the abdominal pain. AR 154.

On April 10, 2000, Plaintiff saw Dr. Mai for a PAP smear and complained that the lateral side of her left foot had been painful. AR 151-152. On examination, Plaintiff had a flat left foot with pain to palpation on the lateral plantar area. AR 151. Dr. Mai assessed Plaintiff with hypertension and plantar fasciitis. AR 151. Dr. Mai opined that Plaintiff's hypertension was well-controlled and she should continue with Atenolol. Dr. Mai also prescribed Indomethacin for Plaintiff's plantar fasciitis and recommended that Plaintiff apply heat to the area, wear well-cushioned shoes, and stay off her foot as much as she could. AR 151.

On September 11, 2000, Plaintiff saw Dan P. Moyes, F.N.P., for treatment of chronic low back pain and spasms. AR 148-150. Nurse Moyes assessed Plaintiff with hypertension, hepatitis C and muscle spasm of the back. He ordered a CBC, liver function test, BMP, hepatitis C, PCR and hepatitis panel. AR 148, 150. He increased her Tenormin dosage and prescribed Robaxin. AR 148.

On October 9, 2000, Plaintiff sought treatment at KMC from Silvia Garcia, M.D., for follow-up of her hepatitis C lab results. AR 144-147. Dr. Garcia noted that Plaintiff was diagnosed with hypertension five months prior to the examination. AR 144. Plaintiff complained of occasional fatigue. AR 144. She did not have insomnia, nausea, vomiting, fevers,

chills, abdominal pain, loss of weight, diarrhea, constipation, palpitations, shortness of breath or lower extremity edema.  AR 144.

On examination, Plaintiff was alert and oriented, she had regular heart rate and rhythm, and no edema in her extremities.  AR 144.  Laboratory data from September 11, 2000, showed a hepatitis C viral load of 4 million.  AR 145.  Her complete blood count was within normal limits.  AR 145.  Dr. Rios assessed Plaintiff with hepatitis C, a lesion on her left foot, and hypertension.  AR 145.  She was prescribed Motrin, warm compresses and leg elevation for her lesion.  She also was prescribed Plendil and continued use of Atenolol for her hypertension.  AR 145.  She received a hepatitis B and hepatitis A vaccine.  AR 145-147.

In January 2001, Plaintiff sought treatment for her hypertension.  AR 140-142.  She reportedly stopped taking her Plendil medication due to swelling.  AR 140.  She was prescribed Tenormin.  AR 142.

On March 26, 2001, Plaintiff sought treatment at KMC for resolution of a neck whiplash injury.  AR 136-139.  Plaintiff was involved in a motor vehicle accident and suffered from a whiplash injury.  She complained of continuing spinal pain and numbness in her hands.  AR 139.  Cranial and thoracic spine films were ordered for the spinal trauma, which dated from December 18, 2000.  AR 137-138.  She was prescribed Motrin for pain.  AR 137-138.

On October 31, 2001, Plaintiff visited KMC for medication refills.  AR 130, 132.  She reported attempting to lower her weight via exercise and diet modification.  She complained of varicose veins with occasional pain and swelling.  AR 130.  The provider assessed her with hepatitis C, varicosities, obesity and chronic fatigue.  AR 132.

On February 20, 2002, Plaintiff sought treatment at KMC for complaints of right foot plantar pain.  AR 128.  Clinic record notes indicated that Plaintiff had multiple varicose veins.  AR 128.

On June 13, 2002, Plaintiff sought treatment at KMC for complaints of a sore right foot and flat feet.  AR 122-124.  Treatment notes indicated that Plaintiff previously did not want treatment for her hepatitis C, but had reconsidered.  She complained of nausea and fatigue.  AR

123. She was assessed with right plantar fasciitis and received a heel injection. She also was assessed with flat feet and prescribed an arch support. AR 124-125.

On June 17, 2002, Plaintiff sought a medication refill from KMC, including Paxil, Zestril, and Tenormin. AR 226-229. Clinic records noted that Plaintiff was having problems with her activities of daily living and with ambulating. AR 226.

On July 22, 2002, Tomas B. Rios, M.D., of Examination Management Services, Inc., completed a consultative internal medicine examination of Plaintiff. AR 106-109. Plaintiff complained of hepatitis C, irregular heart rate, and chronic pain in her foot. AR 106. Dr. Rios noted Plaintiff's history of hepatitis C diagnosed in 1999. AR 106. At the time of the examination, Plaintiff had not undergone a liver biopsy or started on any anti-viral medication. AR 106. Plaintiff described being tired, flu like syndrome, nausea, and vomiting spells. Plaintiff also described her history of irregular heart rate. AR 106. She had a syncope episode three years prior and was started on medication. AR 106. Her symptoms have since improved. AR 106. Plaintiff reported chronic pain in her foot. She indicated that she received cortisone injections at the plantar aspect of her right foot. AR 106.

Upon physical examination, Dr. Rios opined that Plaintiff was not observed to be in any acute distress and she ambulated without any noticeable gait alteration. She measured 64" and 213 pounds. AR 107. Her cardiovascular examination revealed a normal rate and rhythm with no murmurs or rubs. AR 108. Her pulse was strong without any deficits. She had no gallop or pulmonary edema. AR 108. She had no edema to the lower extremities and no tremulousness or asterixis. AR 108. Examination of her feet revealed no deformities. She had slight tenderness along her right plantar region, but not gait alteration. AR 108. Plaintiff had normal motor strength of both upper and lower extremities. AR 109.

Dr. Rios diagnosed Plaintiff with Hepatitis C, a history of arrhythmia, and a history of plantar fasciitis. AR 109. He opined that Plaintiff's allegations of labor restricting complications from hepatitis C were not corroborated upon evaluation. AR 109. She had no stigmata of any significant liver compromise, no evidence of hepatosplenomegaly, and no portal hypertension.

1   She had no evidence of tremulousness or asterixis suggestive of early hepatic encephalopathy.
2   AR 109.
3       In connection with her irregular heart rate, Plaintiff's heart showed regular rate and
4   rhythm without any pulse deficit.  She had no evidence of left ventricular compromise.  AR 109.
5   Dr. Rios noted that Plaintiff reported her bouts of arrhythmia had improved since being on
6   Tenormin.  AR 109.
7       In connection with her chronic and recurrent bouts of pain in her feet, Dr. Rios opined
8   that Plaintiff described pain consistent with plantar fasciitis, but her examination did not reveal
9   evidence of any chronic inflammatory state.  She had some slight tenderness on palpation of the
10  right plantar fascia.  AR 109.  Dr. Rios concluded that she therefore would be precluded from
11  frequent squatting, climbing or prolonged walking on uneven ground.  AR 109.
12      On July 23, 2002, Plaintiff underwent a hepatic function panel.  AR 110.  Her test results
13  were within the reference range.  AR 110.
14      On August 5, 2002, Lavanya Bobba, M.D., completed a Physical Residual Functional
15  Capacity Assessment form.  AR 163-170.  Dr. Bobba opined that Plaintiff could lift and/or carry
16  50 pounds occasionally, 25 pound frequently, stand and or/walk about 6 hours in an 8-hour
17  workday, and sit about 6 hours in an 8-hour workday.  AR 164.  Plaintiff could push and/or pull
18  without limitation, other than as shown for lift and/or carry.  AR 164.  She occasionally could
19  climb a ladder, rope or scaffolds and occasionally could balance, stoop and crawl.  AR 165.  She
20  had no manipulative, visual, or communicative limitations.  AR 166-167.  Dr. Bobba opined that
21  Plaintiff should avoid concentrated exposure to hazards and uneven terrain.  AR 167.  On April
22  29, 2003, Dr. Bobba's opinion was reviewed and affirmed.  AR 170.
23      On August 21, 2002, Plaintiff sought treatment at KMC for her hepatitis C and
24  complaints of fatigue, mood swings, anger outbursts, crying, decreased social activity, and
25  increased anxiety.  AR 116-121.  She was assessed with "HCV" and depression/anxiety.  AR
26  119.  Plaintiff was prescribed Paxil and referred to a GI specialist.  AR 118-122.
27      On December 10, 2002, Shailesh C. Patel, M.D., a board certified psychiatrist, completed
28  a consultative examination of Plaintiff.  AR 111-113.  Plaintiff complained to Dr. Patel of feeling

depressed for the last two years. AR 111. She reported fluctuation with her appetite and sleep. AR 111. Plaintiff indicated she did not do anything and she gave up looking for a job. AR 111.

Upon mental status examination, Dr. Patel opined that Plaintiff had an appropriate affect, a coherent thought process, no suicidal or homicidal ideation, no delusions and no noted obsessions. AR 112. She was tearful and described her mood as low. She was alert and oriented to all spheres, her recent and remote memories were good, she was able to do simple math and register a given phone number. She had a good fund of knowledge and fair insight and judgment. AR 112.

Dr. Patel diagnosed Plaintiff with depressive disorder not otherwise specified, questionable alcohol abuse, hepatitis C and hypertension. AR 112-113. Dr. Patel assigned Plaintiff a global assessment of functioning ("GAF") of 55. AR 113. Plaintiff had a fair prognosis. AR 113. Dr. Patel opined that Plaintiff had the ability to do simple jobs and to sustain concentration and attention. AR 113. Dr. Patel further opined that Plaintiff had minimal evidence of her psychiatric illness affecting her ability to work. AR 113. Dr. Patel noted that Plaintiff was guarded about giving information about alcohol abuse. AR 113.

On January 13, 2003, Plaintiff sought treatment in the gastroenterology clinic at KMC for evaluation of her Hepatitis C. AR 115. Pam Griffin, P.A., assessed Plaintiff with a viral load of 2,500,000 in June 2002, obesity, and improved depression. AR 115. Plaintiff was referred for a liver biopsy. AR 115.

On March 4, 2003, Plaintiff underwent a liver biopsy. AR 232. Tarik Firozi, M.D., reported that fragmented pieces of tissue were obtained. AR 232.

On April 21, 2003, Plaintiff sought treatment in the gastroenterology clinic at KMC. AR 231. Plaintiff complained of increased nausea and decreased appetite. She also reported shortness of breath walking across the street and leg edema. AR 231. The provider diagnosed her with hepatitis C and referred her to hepatology. AR 231.

On June 30, 2003, Plaintiff went for a check-up at KMC. AR 222-224. Clinic record notes indicated that Plaintiff had no problems with her activities of daily living or ambulating. AR 222. She complained of nausea, dizziness, and abdomen distension. AR 223. She was

assessed with hepatitis C and hypertension. AR 224. The provider increased Plaintiff's Zestril dosage and scheduled a follow-up with the hepatology clinic. AR 224.

On August 11, 2003, Plaintiff sought treatment in the hepatology clinic at KMC for her diagnosis of hepatitis C. AR 221. Clinic records noted a liver biopsy in March 2003, which showed grade 3/stage 3 chronic active hepatitis. AR 221. The provider assessed her with hepatitis C, depression, and high blood pressure. AR 221.

On August 25, 2003, Plaintiff saw Dan Moyes, F.N.P. at KMC. AR 217-220. Plaintiff complained of blurry vision and thirst. AR 218. Nurse Moyes assessed Plaintiff as a new diabetic. He also assessed her with hypertension, which he noted was not well controlled on medications. AR 218, 220.

On September 3, 2003, Plaintiff again saw Nurse Moyes for her diabetes. AR 208-213. Nurse Moyes opined that Plaintiff was tolerating the medication well with less thirst and less blurry vision. AR 212. Nurse Moyes diagnosed Plaintiff with diabetes mellitis and hypertension. AR 212-213. He started Plaintiff on Glucophage. AR 209. He also advised Plaintiff to eliminate sugar from her diet and to add Norvasc daily. AR 209. Plaintiff had no noted problems with activities of daily living or ambulating. AR 210.

On September 16, 2003, Plaintiff underwent an echocardiogram. AR 207. The echocardiogram revealed that Plaintiff had normal LV systolic function with an ejection fraction of 53%. She had increased LA size measuring 5.1 cm. Her left ventricular diameter was 5.7 cm and systolic was 4.1 cm. She had trace mitral regurgitation. AR 207. ARSR Karunakar, M.D., concluded that Plaintiff had increased LA size, increased LV size, normal LV systolic function and trace mitral regurgitation. AR 207.

On September 26, 2003, Plaintiff sought treatment at KMC for review of her depression medication. AR 198-201. She had no noted problems with her activities of daily living or with ambulating. AR 198. Plaintiff reported that she recently started Glucophage and she had low blood sugar and increased palpitations. AR 199. The provider assessed Plaintiff with depression, HCV and diabetes mellitus. AR 200. Plaintiff was continued on Paxil for her

depression, which was noted to help. AR 200. Her Glucophage prescription for diabetes was reduced. AR 200-201.

On October 30, 2003, Plaintiff sought treatment at KMC for complaints of pain in her feet and numbness. AR 192-195. She reported no problems with her activities of daily living or with ambulating. AR 192. She also reported her depression was a "little better." AR 193. On examination, Plaintiff had bilateral edema to her knees. AR 195. The provider, My Kha, indicated that Plaintiff should elevate her legs and increase her Norvasc dosage. AR 195.

On October 30, 2003, a memorandum from Sagebrush Medical Plaza Family Medicine Center to Hepatology indicated that Plaintiff needed to have better control of her medical problems prior to starting HCV treatment and that Plaintiff had concerns about therapy side effects. AR 180. Treatment was deferred. AR 180.

On November 24, 2003, Plaintiff sought treatment in the hepatology clinic at KMC. AR 191. Clinic record notes indicated that Plaintiff had stage 3 chronic active hepatitis. She newly was diagnosed with diabetes mellitis. She complained of wavy lines in her vision, muscle spasms, and edema in her ankles. AR 191. She reported use of a cane for ambulation. AR 191. On physical examination, Plaintiff had mild edema in both ankles. It was noted that she was overweight. AR 191. The provider diagnosed Plaintiff with hepatitis C, depression and diabetes mellitis. AR 191.

Between December 30, 2003, and June 14, 2004, Plaintiff saw Steven Lovestrand, Ph.D., three times for intake and individual counseling sessions related to her depression. AR 234-236. Plaintiff discussed her problems with Dr. Lovestrand. AR 234-236. In part, Dr. Lovestrand recommended exercise and weight loss to improve Plaintiff's mood as well as to lower her blood pressure and blood sugar levels. AR 234, 236.

On January 14, 2004, Plaintiff sought treatment at KMC for dizziness and high blood pressure. AR 187-189. Her blood pressure was recorded at 180/98 and 179/97. AR 187, 188. Plaintiff reported that she stopped taking Norvasc because it made her legs swell. AR 187. On examination, she had no edema. AR 187. The provider assessed her with uncontrolled

hypertension. Plaintiff was prescribed medication and her Zestril dosage was increased. AR 187, 189.

On March 22, 2004, My Kha of Kern County wrote a memorandum to State Human Services regarding food stamps. AR 180/ My Kha opined that Plaintiff had multiple medical problems, including hypertension, depression and hepatitis C, that limited her ability. My Kha further opined that Plaintiff needed assistance "to get her medical problems under control." AR 180. Plaintiff visited Kern Medical Center on the same date and indicated that she wanted disability and food stamps. AR 184-185. She also reported depression and anxiety with problems in her activities of daily living. AR 183.

On March 25, 2004, Thomas V. Reese, M.D., of KMC opined that Plaintiff was unemployable for the period of March 23, 2004 through September 21, 2004. AR 179. Dr. Reese identified Plaintiff's medical problem as active HCV, obesity, and diabetes mellitis. Dr. Reese commented that Plaintiff was under a hepatology referral. AR 179.

On May 19, 2004, Plaintiff had a normal ECG test result. AR 177-178.

On June 10, 2004, Plaintiff sought treatment at KMC for complaints of feeling swollen, depression, nocturnal ankle cramps and no response to anti-depressants. AR 175-176. She reported problems with her activities of daily living, problems ambulating, and the use of a cane. AR 176.

On July 15, 2004, Plaintiff sought follow-up treatment at Kern Medical Center. AR 239-241. Clinic records noted that Plaintiff had problems with her activities of daily living and with her ambulation. AR 239. It was noted that she used a "cain." AR 239. Provider My Kha sought a cardiology consultation for Plaintiff at Plaintiff's request. AR 241, 242. The cited reasons for the request included Plaintiff's reported irregular heartbeat and palpitations and difficulty controlling her hypertension. AR 242. My Kha also requested an opthamalogy consultation due to Plaintiff's "increasing poor vision." AR 243.

<u>ALJ's Findings</u>

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. AR 19. The ALJ also found that Plaintiff's history of hepatitis C,

hypertension, non-insulin dependent diabetes mellitus without end stage organ damage, and depression were considered "severe." AR 19. The ALJ concluded that these impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. AR 19. The ALJ found that Plaintiff's allegations regarding her limitations were not totally credible. AR 17-18, 19. He also found that Plaintiff retained the residual functional capacity ("RFC") to lift up to 50 pounds occasionally, lift and carry up to 25 pounds frequently, and sit, stand, or walk for 6 hours in an 8-hour day. AR 19. She was able to climb, balance, stoop, and crawl occasionally. AR 19. She had the mental capacity to understand, remember, and carry out instructions relating to unskilled work, but must avoid frequent public contact. AR 19. The ALJ concluded that Plaintiff's impairments did not prevent her from performing her past relevant work in assembly packaging. AR 19. Therefore, the ALJ found that Plaintiff was not under a "disability." AR 19.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means more than a mere scintilla, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal quotation marks and citation omitted). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the correct legal standards and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. § 416.920 (a)-(g) (2004). Applying the evaluation process in this case, the ALJ found that Plaintiff (1) has not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (hepatitis C, hypertension, non-insulin dependent diabetes mellitus without end-stage organ damage, and depression) based on the requirements in the Regulations (20 C.F.R. § 416.920(c) (2004)); (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in Appendix 1 to Subpart P of Part 404; and (4) has the residual functional capacity to perform her past relevant work in assembly packaging. AR 19.

In this case, Plaintiff contends that the ALJ improperly concluded at Step 3 that she does not have an impairment that meets or equals one of the medical impairments set forth in Title 20 of the Code of Federal Regulations, Appendix 1 to Subpart P of Part 404 ("Listing").

**DISCUSSION**

A.    <u>Substantial Evidence</u>

Plaintiff argues that the ALJ's determination that she does not have an impairment that meets or equals any condition in the Listing is not supported by substantial evidence. Specifically, Plaintiff alleges that she has an impairment that meets and/or equals Listing 4.03

and/or 4.11. The Listing describes impairments "that are considered severe enough to prevent an adult from doing any gainful activity." 20 C.F.R. § 416.925(a) (2004). Most of these impairments are permanent or expected to result in death. *Id.* For all other impairments, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months. *Id.* If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step 3 without further inquiry. 20 C.F.R. § 416.920(d) (2004).

To demonstrate that an impairment matches a listed impairment, the claimant must show that the impairment meets all of the medical criteria in a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* To "equal" a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 416.926(a).

   1. Listing 4.03--Hypertensive Cardiovascular Disease

Plaintiff argues that she meets Listing 4.03 with reference to Listing 4.02 because she has a left ventricular diameter of 5.7 cm and fatigue on physical examination. Pursuant to the Regulations, Listing 4.03 is evaluated under the criteria for chronic heart failure (Listing 4.02) or ischemic heart disease (Listing 4.04). 20 C.F.R. Part 404, Subpart P, Appendix 1, 4.03 (2004). Listing 4.02 requires a showing of "documented cardiac enlargement by appropriate imaging techniques...resulting in inability to carry on any physical activity, and with symptoms of inadequate cardiac output, pulmonary congestion, systemic congestion, or anginal syndrome at rest...." *Id*. at 4.02. Although Plaintiff has a documented cardiac enlargement manifested by a left ventricular diameter of 5.7 cm (AR 207), the record does not demonstrate that the enlargement resulted in her inability to carry on any physical activity. In July 2002, consultative examiner Tomas B. Rios, M.D., opined that Plaintiff was limited only from frequent squatting, climbing or prolonged walking on uneven ground. AR 109. In August 2002, state agency physician Lavanya Bobba, M.D., determined that Plaintiff retained the physical residual functional capacity to lift and/or carry 50 pounds occasionally, 25 pound frequently, stand and

or/walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday.  AR 164.  Plaintiff could push and/or pull without limitation, other than as shown for lift and/or carry.  AR 164.  She occasionally could climb a ladder, rope or scaffolds and occasionally could balance, stoop and crawl.  AR 165.  This opinion was reviewed and affirmed by the state agency on April 29, 2003.  AR 170.  In December 2003 and April 2004, Plaintiff's counselor, Dr. Lovestrand, recommended that Plaintiff engage in exercise and weight loss to alleviate her depression and to lower her blood pressure and blood sugar levels.  AR 234, 236.  Despite testifying that she was unable to take walks to lower her weight because she would get out of breath too quickly and she required the use of a cane all the time, the ALJ observed Plaintiff walking across a parking lot to the hearing site without the use of her cane or requiring other assistance.  AR 18, 260, 270.  Moreover, at no time did Plaintiff's treating physicians preclude her from engaging in physical activity or opine that she was unable to engage in any physical activity.

     Plaintiff also argues that because her treating physician described her as unemployable, she has met the Listing of 4.03.  Although a KMC physician opined that Plaintiff was unemployable in March 2004, the physician did not cite Plaintiff's hypertension or any other cardiovascular issues as a basis for that opinion.  AR 179.  The physician also indicated that her period of unemployment would extend only for the period between March 23, 2004 and September 21, 2004.  AR 179.  There is no evidence in the record that Plaintiff's physician continued to regard her as unemployable at the time the ALJ rendered his decision on September 23, 2004.

     Plaintiff further contends that the ALJ made only a boilerplate finding at Step 3 of the sequential evaluation process.  Contrary to Plaintiff's contention, the ALJ did not make a boilerplate finding at Step 3 without a supporting analysis.  Rather, the ALJ analyzed Listing 5.05 related to liver disease and Listing 12.04 related to affective disorders and concluded that Plaintiff's impairments did not meet or equal a listed impairment.  AR 15.  Insofar as Plaintiff contends that the ALJ's failure to state why Plaintiff did not meet Listing 4.03 is legal error, this contention is without merit.  Under the law of this circuit, "[i]t is unnecessary to require the

[Commissioner], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir.1990).

### 2. Listing 4.11--Chronic Venous Insufficiency

Plaintiff next argues that her impairments meet or equal Listing 4.11 for chronic venous insufficiency because she suffers from bilateral swelling of the lower extremities and is obese. Listing 4.11 requires "incompetency or obstruction of the deep venous system" and either (1) "extensive brawny edema" or (2) "superficial varicosities, stasis dermatitis, and recurrent or persistent ulceration which has not healed following at least 3 months of prescribed medical or surgical therapy." 20 C.F.R. Part 404, Subpart P, Appendix 1, 4.11 (2004). Here, there is no indication that Plaintiff had incompetency or obstruction of the deep venous system or extensive brawny edema under Listing 4.11. Instead, the record demonstrates that Plaintiff only had periodic edema in her lower extremities, which in November 2003 was described as "mild." AR 191, 195. For instance, in October 2002, examination by Plaintiff's treating physician, Dr. Garcia, revealed no edema. AR 191. In July 2002, examination by a consultative examiner showed no edema to the lower extremities. AR 108. In January 2004, Plaintiff reported to her KMC provider that she stopped taking Norvasc because it made her legs swell, but examination revealed that Plaintiff had no edema. AR 187.

Plaintiff further argues that the ALJ erred by not considering her obesity in determining whether she meets or equals a Listing impairment. Plaintiff bears the burden of proving that she has an impairment that meets or equals the criteria of an impairment in the Listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). An "ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Id.* As Plaintiff points out, obesity must be considered throughout the sequential evaluation process, including when determining whether an impairment meets or equals a Listing. Pursuant to SSR 02-1p, the consideration of obesity must be based on the information in the case record. *Id.* at 683; SSR 02-01p (2002) ("we will not make assumptions about the severity or functional effects of obesity combined with other impairments...[w]e will evaluate each case based on information

19

in the case record"). Here, Plaintiff provides no evidence of functional limitations due to her obesity. Although Plaintiff testified that she gets out of breath when walking for exercise (AR 270), she presented no testimony that her obesity impaired her ability to work. To support her argument, Plaintiff cites to the opinion of a KMC physician who opined that she is unemployable because of the combined effects of her obesity and other related conditions. The opinion of the KMC physician, however, was a cursory, fill-in-the-blank form that identified Plaintiff as "unemployable." AR 179. The form contained a list of diagnoses, including obesity, but provided no description, analysis or explanation of Plaintiff's functional limitations. AR 179. The ALJ gave limited weight to this opinion since it was in the context of helping Plaintiff obtain financial assistance. AR 17. Further, treatment notes and diagnoses of Plaintiff's obesity do not describe any functional limitations she may have as a result of her obesity that would support the diagnosis and findings of Listing 4.11.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Renee N. Perea.

IT IS SO ORDERED.

**Dated:    July 17, 2007**                    **/s/ John M. Dixon**
                                    UNITED STATES MAGISTRATE JUDGE